**NATIONAL FEDERATION OF FEDERAL EMPLOYEES, et al., Plaintiffs,**

v.

**Major General Paul GREENBERG, et al., Defendants.**

**Civ. A. No. 91–2894 (HHG).**

United States District Court, District of Columbia.

April 15, 1992.

H. Stephan Gordon, General Counsel, Joshua F. Bowers, Staff Atty., Nat. Federation of Federal Employees, Washington, D.C., for plaintiffs.

Sally M. Rider, Asst. U.S. Atty., Washington, D.C., for defendants.

## OPINION

HAROLD H. GREENE, District Judge.

In this case civilian employees of the Department of Defense seek to enjoin the use by that Department of a questionnaire for the review of existing security clearances and the grant of new ones.[1] Plaintiffs claim that the questions are violative of their rights under the First and Fifth Amendments to the Constitution and their rights under the Privacy Act. These plaintiffs are (1) individuals employed at the United States Army Armament, Munitions, and Chemical Command in Rock Island, Illinois,[2] and (2) the National Federation of Federal Employees (hereinafter union), which represents such employees. The defendants are Secretary of Defense Richard Cheney and Major General Paul Greenberg, Commander of the Rock Island facility. The Court will grant the injunction sought by plaintiffs.

## I

### Facts

Plaintiffs contend that certain parts of Defense Department Form DD 398–2, specifically questions 18, 19, 20 and 21, violate both the United States Constitution and the Privacy Act, 5 U.S.C. § 552a.

Briefly, question 18 requires the applicant for a new clearance or the retention of an existing clearance to disclose all arrests, including those in which the charges were dismissed, there was no conviction, or the arrest was expunged. Question 19 deals with the applicant's financial status and requires disclosure of any delinquency for debt, filing for bankruptcy, subjection to a tax lien, garnishment of wages, and any unpaid judgment. Question 20 demands information on any past or present drug activity or alcohol abuse as well as on any past or present treatment for any mental, emotional, or psychological problem. And question 21 mandates that the applicant disclose any affiliation with the Communist Party or any other Communist organization as well as all other organizational affiliations since the age of sixteen, with the exception only of labor unions, political organizations, and religious organizations.

Beyond that, each employee must authorize any accredited Department of Defense employee "to obtain any information relating to any activities from individuals, schools, residential management agents, employers, criminal justice agencies, finan-

---

1. The questionnaire is also used where a security clearance is not required; i.e., for personnel occupying "sensitive" positions, such as individuals with access to arms, armed guards, persons with sensitive automated data processing positions, and the like.

2. However, the form appears to be used not merely there but throughout the Department of Defense, and while this is not entirely without doubt, the plaintiffs appear to seek relief on a nationwide basis.

cial or lending institutions, credit bureaus, consumer reporting agencies, retail business establishments, medical institutions, hospital or other repositories of medical records ... [including] but not limited to, any academic, residential, achievement, performance, attendance, personal history, disciplinary, criminal history record, arrest, conviction, medical, psychiatric/psychological, and financial and credit information."

The Court must weigh four factors in considering a motion for a preliminary injunction: (1) the likelihood that plaintiffs will succeed on the merits; (2) the threat of irreparable harm to plaintiffs if the injunction is not granted; (3) the possibility that defendants and others will suffer substantial harm in the event that injunctive relief is granted; and (4) the interest of the public. *Population Institute v. McPherson*, 797 F.2d 1062, 1078 (D.C.Cir.1986); *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C.Cir.1977).

## II

### *Standing*

 Under the rubric of the issue of likelihood of success, the Department of Defense argues that plaintiffs lack standing to sue because they face no cognizable injury, and that for that reason they could not prevail on the merits. There is no merit to that argument.

A plaintiff lacks standing if the alleged injury is speculative or hypothetical. *See Albuquerque Indian Rights v. Lujan*, 930 F.2d 49 (D.C.Cir.1991). In addition, the complained of injury must fall within the "zone of interests" protected by statute or the Constitution. *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 471, 102 S.Ct. 752, 757–58, 70 L.Ed.2d 700 (1982). As explained below, the individual plaintiffs face direct interference with their constitutional and other legal rights, and they plainly have standing on that basis. *Id.* at 472, 102 S.Ct. at 758–59.

 As for the union, it has associational standing under *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). That is so because the members whose interests NFFE seeks to represent would themselves have standing; the interests sought to be protected by the organization are germane to its organizational purpose; and the relief sought does not require the individual members to be parties to the suit. *See International Union v. Brock*, 477 U.S. 274, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986).

The Court concludes that the plaintiffs have standing to sue.

## III

### *Arrest and Financial Questions*

 On the merits, the Court considers first the arrest question and that which demands information regarding the individuals' finances.

As a general matter, a government agency may maintain in its records "such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President." 5 U.S.C. § 552a(e)(1).

Question 18 of the questionnaire, as noted, requires applicants for employment and employees in place to list all prior arrests, including juvenile arrests, without regard to subsequent dismissal, exoneration, or expungement.[3]

Question 19 asks for broad financial disclosures with regard to such matters as garnishments and tax liens that may have been applied in the past, as well as past and present unpaid judgments and debt delinquencies.

The Department of Defense claims that all such information has a specific relationship to its legitimate activities and purposes. But the only relationship identified in the Department's papers is that the information would ensure that the access of each employee to classified information will

---

**3.** State-expunged arrests must be reported, but not all arrests expunged by federal courts.

be "consistent with the national interest," [4] without any elaboration.[5] That broad and vague statement hardly demonstrates a "specific" relationship sufficient to overcome plaintiffs' specifically-pleaded constitutional and statutory rights.

This problem is aggravated by the fact that the questions are required to be answered without regard to the nature of the individual's position, and the further fact that some of the individuals required to complete the questionnaire do not even require a security clearance.[6]

The legitimacy of the relationship between the information sought and the government's appropriate interest depends, in some respects at least, upon the nature of the employee's job. To put it another way, while the Department may be entitled to *some* information with respect to *some* employees, it may not under our system of laws require all employees with security clearance or seeking such clearance (as well as some others) to provide replies to blanket inquiries such as those in questions 18 and 19.[7] Presumably any question, no matter how far-fetched or offensive to privacy or other legal rights, might on a rare occasion lead to information of interest to security officials. However, in this nation with a Constitution at the apex of its legal and political system, such hypothetical and minimal security considerations are not permitted to trump the vested rights of citizens.

The Court anticipates that prior to a final decision of this case on the merits the Department will tailor the questions on a substantially refined basis and that it will demonstrate with greater specificity than it has done thus far the relationship between the information sought and the government interest as to the various categories of employees.

## IV

### *Mental Health and Drug Use*

Question 20, which requires information about illegal drug use [8] and any past or present mental, emotional, or psychological problems or treatment, raises several legal difficulties.

■ A. With regard to the mental health part of the question, plaintiffs advance contentions similar to those they make with respect to the arrest and financial disclosure questions. It is plain that, at a minimum, individuals—even those working for the Department of Defense—may not routinely be required, consistently with the Constitution and the Privacy Act, to reveal in detail past emotional or psychological problems, much less treatment for such problems. *AFGE Railroad Retirement Council v. U.S. Railroad Retirement Board,* 742 F.Supp. 450 (N.D.Ill. 1990); *see generally, Olmstead v. United States,* 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting). Here again, while information on these topics may be of some value to the security officers of the Department of Defense, the requirement that thousands upon thousands of individuals must reveal the most intimate details of their lives under this rubric is so intrusive that on any balancing privacy considerations will prevail. As has justly been said, it is estab-

---

4. Defendants' Opposition at 12.

5. Attached to the Department's opposition are affidavits by personnel involved in various aspects of the evaluation of the information sought by the questionnaire. Although the Department does not explicitly rely on these affidavits in its papers on the legitimacy issue, some of the statements discuss how some of the questions at issue are used in evaluating employees. However, the statements, too, are largely generalized. Furthermore, none demonstrates a specific relationship between the information sought and the governmental interest.

6. Defendants' Opposition, Exhibit 1 at 2; *see* note 1, *supra.*

7. The Department of Defense presumably has a legitimate interest in arrests even if expunged if, for example, the individual being considered for employment or retention works directly, say, as a confidential assistant for the Joint Chiefs of Staff or on the nuclear weapons program. That interest is far more attenuated if the employee, such as plaintiff David Wiefing, is a publication specialist at the Rock Island facility.

8. Alcohol use must also be disclosed if it resulted in official action of any kind.

lished that citizens are entitled to be free from government compulsion regarding private facts unless there are legitimate concerns overbearing this right to be left alone. *Ramie v. City of Hedwig Village,* 765 F.2d 490, 492 (5th Cir.1985).

 B. The "drug" question suffers from all the defects discussed above and in addition it also raises substantial concerns under the Fifth Amendment,[9] for the questionnaire itself explicitly states that the disclosed information may be disclosed to "federal, state, local, or foreign law enforcement authorities," including the Department of Justice.[10]

It is well established that among the rights to which government employees, like other citizens, are entitled is the right against self-incrimination. *See O'Connor v. Ortega,* 480 U.S. 709, 717, 107 S.Ct. 1492, 1497, 94 L.Ed.2d 714 (1987). An employee may be compelled to answer questions "specifically and narrowly" directed at his job performance if there is an assurance that the fruits of the information cannot be used against him in a criminal case. *Devine v. Goodstein,* 680 F.2d 243, 246 (D.C.Cir.1982), *citing Uniformed Sanitation Men Ass'n, Inc. v. Comm'r of Sanitation of City of New York,* 392 U.S. 280, 284–85, 88 S.Ct. 1917, 1919–20, 20 L.Ed.2d 1089 (1968).

Not only are the questions here not narrow but sweeping, but there is no assurance that the answers will not be used against the employee in a criminal case. On the contrary; it is clear from the Defense Department's own papers that it is contemplated that the information *will* be used against the employees in criminal prosecutions. Question 20, as it now stands, is seriously flawed under the Fifth Amendment.

## V
## *Organizational Affiliations*

Finally, there is question 21, which inquires into the organizational affiliations of employees and applicants. This question as is obvious, raises grave First Amendment problems. The question requires every applicant for clearance, regardless of how long he may have been employed in the Department of Defense, to list "all organizations except labor unions, political or religious organizations" to which he had belonged since the age of sixteen.[11]

 It is well established that disclosure of organizational affiliations may infringe on the First Amendment right of association. *N.A.A.C.P. v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1957). For there is a long-recognized and "vital relationship between freedom to associate and privacy in one's associations," *id.* at 462, 78 S.Ct. at 1172, one that question 21 ignores. Whether the beliefs to be advanced by association be "political, economic, religious or cultural," they form an indispensable part of freedom of speech. *Id.* at 460, 78 S.Ct. at 1170. Information of this type may be required to be revealed only if there is a relevant correlation or a substantial relation between the government interest and the information sought. See *Shelton v. Tucker,* 364 U.S. 479, 485, 81 S.Ct. 247, 250–51, 5 L.Ed.2d 231 (1960).

At a minimum, therefore, the question is overbroad. Beyond that, question 21 is also otherwise constitutionally impermissible. *See Shelton v. Tucker,* supra, 364 U.S. at 485–88, 81 S.Ct. at 250–52 and *Fraternal Order of Police v. Philadelphia,* 812 F.2d 105 (3rd Cir.1987). In *Shelton,* Justice Stewart, speaking for the Supreme Court, pointed out that the teachers who were the governmental target in that case,

**9.** "No person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const.Amend. 5.

**10.** The information may also be disclosed, *inter alia,* to any federal agency making a security determination or "letting a contract," to the General Services Administration and the Merit Systems Protection Board, and to individual and entities "outside the ... U.S. Government

for" counterintelligence activities. National Agency Questionnaire, DD Form 398–2, at 1.

**11.** Each individual must also list other individuals with whom he has associated if those individuals were "members of the described organizations ... and the organization with which they were or are affiliated."

were "require[d] to list, without number, every conceivable kind of associational tie—social, professional, political, avocational, or religious. Many such relationships could have no possible bearing upon the teacher's occupational competence or fitness." 364 U.S. at 488, 81 S.Ct. at 252.[12]

Indeed, while "political organizations" are excepted, the Department of Defense has not even attempted to provide a definition or explanation of what is included in the term "political organizations" (any more than the term "religious" organizations is defined). One may speculate that political action committees and political parties are exempt, but that is not at all certain, one way or the other, with respect to many other groups.

Indeed, there is a wide span of organizational activity that is protected under the First Amendment but that would likely fall within the parameters of question 21 or with respect to which the issue is wide open. It is unclear, for example, whether membership in Common Cause, Planned Parenthood, the National Rifle Association, or the National Association for the Advancement of Colored People, to cite a few of the most obvious examples, may be excluded as affiliation with a political organization. Likewise no one can know whether membership groups that nominally focus on non-partisan issues but may well have political agendas, such as health care, hunting, or abortion, are to be included. In brief, the breadth and ambiguity of the question may encompass a substantial amount of constitutionally protected organizational activity, and the question at a minimum has a chilling effect on such activity.

In addition, the question seeks the employees' organizational affiliations since the age of sixteen. In turning back similar inquiries of another generation, the Supreme Court held that a state legislative committee did not have sufficient reason for inquiring into communist activities more than six and half years in the past because that information was merely "historical." *DeGregory v. New Hampshire*, 383 U.S. 825, 829–30, 86 S.Ct. 1148, 1151–52, 16 L.Ed.2d 292 (1966).

In response to all this well-established law, the government cites and recites "national security" in mantra-like fashion. Of course, the safeguarding of national security is an extremely important obligation of government, and government has the concomitant authority to protect that security against risks and dangers. However, security concerns do not, under the American system or ordered liberty, ipso facto override all constitutional and privacy considerations. The purpose of national security is to protect American citizens, not to overwhelm their rights.[13]

## VI

### *Other Rights Violations*

Plaintiffs are suffering yet another injury, in that the personal details of their lives may be disclosed and made available to an unknown segment of the vast federal bureaucracy as well as the bureaucracies of the states and of foreign nations. No one can know what the several security and prosecutive agencies and the various individuals within those agencies will do with the information gathered by the Department of Defense under compulsion, in addition to or in lieu of the possible criminal prosecutions noted *supra*.

■ The Department argues in effect that if they are clean in all the respects covered by the questionnaire, the employees should not mind providing the requested information. That argument, taken to its logical conclusion, would eliminate the need for and the utility of most if not all

---

12. To be sure, political and religious organizations are omitted from the requirement of the Department of Defense questionnaire, but in all other respects the *Shelton* decision applies directly. As to the exempted organizations, *see infra*.

13. The weakness of the case of the Department of Defense in this regard is exacerbated by the circumstance that, as the Department recognizes (Defendants' Memorandum at 22), it cannot rely on any specific statutory authorization but only on the powers of the President as commander-in-chief.

constitutional and other legal protections in every conceivable circumstance.[14] This kind of argument is most often made by those, here and abroad, who regard the search for and the punishment of criminals and possible security risks as overriding all other considerations. But in this country the Constitution protects all citizens, the guilty as well as the innocent, and a person need not prove himself innocent to be left alone.

The Supreme Court has stated that "[A] witness may have a reasonable fear of prosecution and yet be innocent of any wrongdoing," *Slochower v. Board of Education,* 350 U.S. 551, 557, 76 S.Ct. 637, 641, 100 L.Ed. 692 (1956), and the Fifth Amendment protects "the innocent who otherwise might be ensnared by ambiguous circumstances." *Id.* at 557–58, 76 S.Ct. at 641. This could not be more true than where, as here, the sweep of the questions is exceeded in its breadth only by the universe to which the information may be disclosed. There is a real, a clear and present danger, that the Department of Defense questionnaire will be the vehicle for a wholesale violation of constitutional rights.[15]

\* \* \* \* \* \*

▮▮▮ In the context of a request for a preliminary injunction, plaintiffs need not demonstrate an absolute certainty of success on the merits. *Washington Metropolitan Area Transit Commission, supra,* 559 F.2d at 844. It is enough that they raise legal questions that are sufficiently

serious and substantial that a more thorough investigation is appropriate. *Population Institute v. McPherson, supra,* 797 F.2d at 1078. The Court concludes that this case involves serious and substantial issues involving important constitutional and statutory rights.[16] While there is also involved an obvious governmental interest related to security, the Court's analysis of the merits suggests that the Department of Defense questionnaire, in its current form,[17] is not likely to survive challenge.

## VII

### *Irreparable Injury*

▮▮▮ Barring a preliminary injunction, the Department of Defense will be able to utilize the questionnaire beginning May 1, 1992.[18] Nevertheless, the Department argues that plaintiffs will suffer no irreparable injury because the only possible consequence of the use of the questionnaire would be loss of job or denial of a security clearance.

To be sure, in some circumstances job loss has not been recognized as an irreparable injury, *see Sampson v. Murray,* 415 U.S. 61, 89–90, 94 S.Ct. 937, 952–53, 39 L.Ed.2d 166 (1974), but loss of position as a consequence of unconstitutional action or demand is an injury from which the courts will afford protection. *See Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) (terminating employees on the basis of their political affiliations violates

---

**14.** On the same basis, the Fourth and Fifth Amendments could be dispensed with in criminal cases on the theory that innocent people do not need their protection.

**15.** With regard to plaintiffs' claims under the Administrative Procedure Act, the Department contends that such review is precluded because "a court would have no meaningful standard against which to judge the agency's exercise of discretion." Defendants' Memorandum at 21–22. Surely, the Department of Defense does not mean to argue that the Constitution of the United States does not provide a standard against which the legality of governmental action may be measured.

**16.** The requirement that the employee agree to a broad and undefined release authorizing the Department of Defense to obtain further infor-

mation about the employee from individuals, schools, lending institutions, medical institutions, and several others appears also to violate the Privacy Act. 5 U.S.C. § 552a(c)(1).

**17.** As indicated *infra,* it is not the holding of the Court that a more modest questionnaire, with questions tailored to particular classes of employees on the basis of the true sensitivity of their positions, and the elimination of the queries most offensive to the Constitution, could not pass muster.

**18.** Some employees have already submitted the forms. However, the government has agreed to hold them without review until April 1, 1992 (since extended to May 1, 1992 by government counsel's agreement of March 25, 1992). Thus, for purposes of this motion, the information contained in the forms is not deemed disclosed.

**438**

the First Amendment and constitutes irreparable injury). Further, loss of a job is not the end of it: irreparable injury flows not only from the employee's failure to complete the form or to complete it in a manner that the Department deems unacceptable; the intrusive nature of the compelled disclosure itself also constitutes such injury. *Shelton v. Tucker, supra,* 364 U.S. 479, 81 S.Ct. 247; *Fraternal Order of Police v. Philadelphia, supra,* 812 F.2d at 118. There is of course no effective method of retrieving the privacy lost through disclosure; it is gone forever.

The injury is even more patent when it is recalled that the form requires that applicants sign an Authorization for Release of Information and Records. This authorization threatens still greater loss of privacy, and here again, once gone the information cannot be retrieved.

The Department asserts that this disclosure of the information does not constitute an injury unless and until that information has actually been requested by and disclosed to others. In a similar vein, it is argued that those who do not have prior arrests or have not sought psychological counseling, for example, suffer no injury because they have no information to disclose. This argument is circular. Under the government's reasoning, to be protected from unwarranted invasions of their privacy, the individual employees would have to prove that they had been arrested or sought the assistance of a psychological or mental health counselors, but if they so stated affirmatively, the Department would presumably be free to contend that these employees were unacceptable security risks. That is how dictatorships operate, not the government of the United States.

Finally, the Department contends, again along the same line, that there is no Fifth Amendment concern with the question demanding information on illegal drug use because no one has yet actually claimed self-incrimination, or if he has, there is no evidence that he has been prosecuted. Defendants' Memorandum at 20. When the government forces open a door to one's private life, the individual being required to provide the key need not also prove that others have or will peer in. The exposure itself is the injury. On that basis, it is not a reparable injury.[19]

█ No court appears ever to have decided that an individual required by government unlawfully to incriminate himself may obtain relief only after he has been prosecuted with the assistance of the incriminating evidence. The government cites no cases for so unusual a proposition. Similarly, the courts have never held that because the plaintiffs may not be willing to allege "prior arrests ..., substance abuse or mental health difficulties," Defendants' Memorandum at 5, there is no injury.

Indeed, the law is to the contrary. *N.A.A.C.P. v. Alabama, supra,* recognizes that compelled disclosure of organizational affiliations is itself injurious to First Amendment rights. 357 U.S. at 462, 78 S.Ct. at 1171–72. Similarly, in *Shelton v. Tucker, supra,* the Court struck down a state law requiring teachers to disclose all organizational ties without reference to whether such disclosures would lead to injurious consequences. Rather, disclosure itself was the injury because it would "broadly stifle fundamental personal liberties." *Id.,* 364 U.S. at 488, 81 S.Ct. at 252. In a like vein, when federal employees were subjected to urinalysis, this Court held in *Bangert v. Hodel,* 705 F.Supp. 643 (D.D.C.1989), that it was not merely those employees who would be detected as drug users who suffered injury. On the contrary, the intrusive nature of the procedure, *per se,* was the injury, not the possible consequences to some. *See id.* at 655. *See also, Doe v. Rampton,* 366 F.Supp. 189 (D.Utah 1973), *remanded on other grounds,* 410 U.S. 950, 93 S.Ct. 1423, 35 L.Ed.2d 683 (1973).

Plaintiffs will suffer irreparable injury under the questionnaire program in its present form.

---

**19.** Further, the NFFE, on behalf of its members, may seek to vindicate these rights even if individual plaintiffs are not prepared to assert that they have in the past used drugs, that they have been members of radical organizations, or that they have been in psychological counseling.

## VIII

### *Possibility of Harm to Defendants*

██ As indicated, the Court is cognizant of the importance of protecting national security. But an injunction in this case is not likely to harm that security. That assessment can be made *inter alia* on the basis of the relative complacency with which the government has treated the issue until now. The named employees in this action have served the Department of Defense for many years. According to plaintiffs' unrebutted contention, they, and many of the individuals represented by the associational plaintiff in this suit, have not been questioned about their suitability since their entry into the Civil Service. In the case of the individual plaintiffs this has been a period of between eighteen and twenty-six years, depending on the individual.

In view of this record, it is difficult to conceive that severe adverse consequences will face the Department from the issuance of a preliminary injunction. Such consequences have presumably not occurred until now. The Department knows the individuals at issue as employees and has had the opportunity to observe them for a long time.

Moreover, a preliminary injunction in this case will not deprive the Department of a host of other means of investigating individuals for clearance. *See* Stewart Declaration (Department's exhibit detailing the means used in conducting background checks). The claim that without explicit disclosures by all the individuals, whatever their position, of all the information required by the questionnaire, the Department would be unable adequately to gather or assess relevant information about its employees is simply not credible. The Court concludes that the potential injury to the Department does not outweigh, it is not even remotely equivalent to, the irreparable injury to plaintiffs.

## IX

### *Public Interest*

██ The public interest in a case such as this is an amalgam of the interests of both parties. On the one hand, the public interest demands that national security be preserved and the trustworthiness and competence of federal employees be ensured. On the other hand, the public interest is most decidedly served by preservation of constitutional values and the privacy of American citizens.

Constitutional doubts concerning measures such as those involved in this case have long been expressed by the courts as well as in the marketplace of legal ideas. Yet now, following the demise of Communism with its systematic disregard of civil liberties, and the fading into history of the era of Senator Joseph McCarthy with its false claims of a need to protect national security at all costs, including the cost of deprivation of the constitutional rights of citizens,[20] it is especially difficult to justify the relaxation of the constitutional protection that would be implied by a decision in favor of the Department of Defense questionnaire. Such a relaxation will not be permitted. To do so would not be in the public interest.

██ The Court will enjoin use of the four questions referred to above on Form DD 398–2 pending a final decision of this action on the merits. The injunction will be without prejudice to the submission to the Court by the Department of Defense of a more narrowly drawn, legally valid questionnaire.

An Order consistent with this Opinion is being issued contemporaneously herewith.[21]

**20.** Much of the so-called McCarthyism by the Senator of that name and others was directed at employees of the federal government, including the military and those associated with the military (*e.g.*, Major Irving Peress).

**21.** While the order directs a halt to the use of the questionnaire, it merely maintains the status quo and does not require a return of the completed questionnaires to the employees, as plaintiffs request. However, the forms may not be reviewed pending a decision on the merits.

**440**

## ORDER

Upon consideration of the motion for a preliminary injunction, the opposition and reply thereto, the exhibits, and the entire record herein, it is this 15th day of April, 1992, in accordance with an Opinion issued herewith

ORDERED that the motion for a preliminary injunction be and it is hereby granted; and it is further

ORDERED that defendants are hereby enjoined, pending disposition of this action on the merits, from compelling answers to questions 18, 19, 20 and 21 in DD Form 398–2, or from utilizing information provided in response to such questions.